UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**STELLA KURZ**
607 Auckland Way
Chester, MD 21619

**CHERYL CRAMMER**
662 Crucible Court
Millersville, MD 21109

**KENDALL FAUCETTE**
4209 Bar Harbor Place
Bowie, MD 20720

  Plaintiff,

                   Civil Action No.: 1:22-cv-2438

v.

**AUTUMN LAKES HEALTHCARE**
4201 Route 9
Howell, NJ 07731

  Defendant.

---

## COMPLAINT
---

  Plaintiffs Stella Kurz, Cheryl Crammer, and Kendall Faucette, for their complaint against Autumn Lakes Healthcare ("Autumn Lakes"), and respectively avers as follows:

### PARTIES

1. Plaintiff Stella Kurz is a resident of the state of Maryland.

2. Plaintiff Cheryl Crammer is a resident of the state of Maryland.

3. Plaintiff Kendall Faucette is a resident of the state of Maryland.

4. Defendant Autumn Lakes HealthCare is a business principally based in state of New Jersey.

1

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1332.

6. Venue is proper under 28 U.S.C. § 1391(b) because Defendants conduct business and can be found in this judicial district.

7. The events giving rise to the claims in this action occurred in this judicial district.

## FACTUAL BACKGROUND

8. Autumn Lakes Healthcare (hereinafter "Autumn Lakes") Autumn Lakes maintains a network of nursing homes and rehabilitative care centers across Connecticut, New Jersey, Maryland, West Virginia and Wisconsin.

9. On or about June 1, 2022, Autumn Lakes officially took over SavaSeniorCare Administrative Services LLC (hereinafter "Sava").

10. Stella Kurtz is a former licensed nursing home administrator of Autumn Lakes. She was the administrator at the Autumn Lakes facility located at 2700 S. Haven Rd., Annapolis, MD 21401. Prior to the merger, Kurz started working for Sava beginning January 2022.

11. Cheryl Crammer is a former Director of Minimum Data Set ("MDS"). Crammer worked at the Autumn Lakes facility located at 2700 S. Haven Rd., Annapolis, MD 21401. Prior to the merger, Crammer was an employee with Sava for 20 years.

12. Kendell Faucette is a former MDS Coordinator. Faucette worked at the Autumn Lakes facility located at 2700 S. Haven Rd., Annapolis, MD 21401. Prior to the merger, Faucette started working for Sava beginning November 2021.

13. Soroh Levi is the Regional MDS Coordinator for Autumn Lakes.

14. On June 2, 2022, Crammer and Faucette received an email from Autumn Lakes MBS Regional Coordinator Soroh Levi. The email from Levi stated:

    "ran thr[ough] all residents in PCC and below are my comments – we

2

> **really wanna work on increasing CMI. I ran the rug analysis report for all these residents and picked a day that can [bring] up ADLs in our RUG – please print those ADLs from SAVA so we have the support and please open appropriateMDSs."**

15. In other words, Levi directed Crammer and Faucette to fraudulently increase the "CMI" (Case Miss Index), or revenue stream for Autumn Lakes. The modification would retroactively alter the level of care for Autumn Lakes patients (formerly patients of Sava). Even though the CMI's were already reported to the Center for Medicaid Services (hereinafter "CMS").

16. On June 2, 2022, Crammer and Faucette discussed Levi's demand to backdate patient billing records. But both declined to do so because Levi's request was illegal or fraudulent.

17. On June 2, 2022, on behalf of both Crammer and Faucette, Crammer met with Administrator Kurz to inform her about Levi's request to commit fraud.

18. Crammer told Kurz that Levi asked both Crammer and Faucette to illegally backdate patient billing records, and report the proposed modified patient billing records to CMS. Crammer told Kurz that Levi's request was fraudulent or considered "backdating." Crammer told Kurz that neither she, nor Faucette, would carry out Levi's directive. Kurz agreed and told Crammer to keep her in the loop.

19. On June 6, 2022, Crammer followed with up with Levi. In a June 2022 email, Crammer asked Levi to clarify the timeframe for Levi's backdated billing request. Crammer requested that Levi clarify whether Levi wanted Crammer and Faucette to bill for the current period of June 2022, or backdate to May 2022. Levi confirmed in email, "Nope, I meant May."

20. Between June 6, 2022 to June 13, 2022, Crammer went on vacation. While on vacation, Faucette still did not carry out Levi's unlawful order to modify or backdate patient billing records.

21. On June 13, 2022, Levi visited to Faucette's office. Levi asked Faucette why she had still not committed the backdated/fraudulent billing. Faucette told Levi that they refused to do it because it was considered "backdating," and that they didn't want to "do anything fraudulent." Levi became irate, and threatened to terminate Faucette and Crammer, if they did not comply with Levi's fraudulent billing request.

22. On June 13, 2022, Levi met with Kurz at the Autumn Lakes facility. Levi told Kurz that she met with Faucette and confirmed that Faucette failed to follow her unlawful orders and backdate patient records. Levi further told Kurz that she was angry that Crammer did not direct Faucette to complete the fraudulent billing.

23. During their meeting, Levi continued to vent about Crammer and Faucette not carrying out unlawful acts for Autumn Lakes. But Kurz pushed back and told Levi that both Faucette and Crammer were the best MDS staff members at Autumn Lake. Kurz also told Levi that she would speak to them.

24. On June 14, 2022, Faucette spoke with Crammer about Levi's irate confrontation on June 13, 2022. During their discussion, Crammer confirmed that she spoke to the state of Maryland RAI Coordinator on June 13, 2022. During her discussion, the Maryland RAI Coordinator also determined that Levi's request amounted to fraud.

25. On June 14, 2022, Crammer, Faucette and Levi planned to hold a conference call. But Crammer and Faucette decided that it would be best for Kurz to attend the call. Consequently, both Crammer and Faucette made the call with Kurz present.

26. Upon learning that Kurz was present on the call, Levi became furious and belligerently ended the call.

4

27. On June 14, 2022, Crammer and Faucette informed Levi that they completed the assessments or billing. But they informed Levi that they were not "signing" or "locking" the assessments for reporting purposes.

28. On June 14, 2022, Levi called Crammer and threatened to terminate her if she did not lock or sign the fraudulent billing assessments. On June 15, 2022, Crammer reported Autumn Lakes to CMS. CMS opened an investigation on June 15, 2022.

29. On June 15, 2022, Levi contacted Kurz. During their call, Levi stated that she wanted Kurz to terminate both Faucette and Crammer because they were not "team players, do not fit the Autumn Lakes culture, and needed to be terminated." But Kurz refused and told Levi that she did not believe either Crammer or Faucette's conduct warranted termination.

30. During the call, Levi told Kurz, "they finished the [MDS Assessments] but they will not sign and date it. They want [Levi] to lock it, sign it, and date it." Kurz told Levi, "they are uncomfortable to sign and date their name because they do not agree with the assessment." Kurz further told Levi that Levi will have to sign it, date it, and send it." Levi told Kurz that she would call her back. But Levi never called Kurz back.

31. On June 15, 2022, Kurz met with Crammer. Crammer informed Kurz that Levi threatened her with termination for failing to commit the unlawful act. Crammer told Kurz that she knew termination was imminent. Kurz confirmed.

32. Prior to terminating Crammer, Kurz called Human Resources Director Ronika Jones. During the conversation with Jones, Crammer confirmed that Levi asked her to commit fraud. Prior to termination, Kurz told Crammer that she was the "backbone" of the facility. Notwithstanding, Crammer was terminated on June 15, 2022.

33. After termination, Crammer informed the state of Maryland RAI Coordinator that she had been fired by Autumn Lakes. On June 17, 2022, the Maryland RAI Coordinator told Crammer

5

that due to her allegations, the Maryland RAI Coordinator would open an investigation into Medicaid and Medicare fraud against Autumn Lakes.

34. On June 16, 2022, Kurz met with Faucette. Faucette was terminated on June 16, 2022.

35. Thirteen days later, on June 29, 2022, Kurz, an experienced and highly regarded Administrator, was terminated from Autumn Lakes.

## CAUSES OF ACTION

### Count 1: False Claims Act 31 U.S.C.§ 3730(h)
*Retaliation*

36. Plaintiffs incorporates every preceding paragraph as alleged above.

37. The False Claims Act retaliation provision protects employees from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms and conditions of employment because of the lawful acts done by the employee in furtherance of an action under 31 U.S.C §3730, or other efforts to stop one or more violations of the False Claims Act.

38. Plaintiffs were discharge by Defendant for their efforts to stop one or more violations of the False Claims Act.

WHEREFORE, Plaintiffs pray for nominal damages; compensatory damages, in an amount to be determined at trial; punitive damages, in an amount to be determined at trial; attorney's fees and the costs of this litigation; back pay, front pay, and future benefits, as may be appropriate; pre- and post-judgment interest; and any other relief the Court deems necessary and appropriate.

## CAUSES OF ACTION

### Count 2: Maryland False Claims Md. Code Ann. Gen. Prov. §§8-101 et. seq.
*Retaliation*

39. Plaintiffs incorporates every preceding paragraph as alleged above.

40. The Maryland False Claims Act retaliation provision protects employees from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in terms and conditions of employment because of the lawful acts done by the employee in furtherance of an action under Md. Code. Ann. Gen. Prov. §§8-101(j), or other efforts to stop one or more violations of the Maryland False Claims Act.

41. Plaintiffs were discharge by Defendant for their efforts to stop one or more violations of the Maryland False Claims Act.

42. WHEREFORE, Plaintiffs pray for nominal damages; compensatory damages, in an amount to be determined at trial; punitive damages, in an amount to be determined at trial; attorney's fees and the costs of this litigation; back pay, front pay, and future benefits, as may be appropriate; pre- and post-judgment interest; and any other relief the Court deems necessary and appropriate.

## JURY DEMAND

### PLAINTIFF DEMANDS TRIAL BY JURY

Dated: September 26, 2022

By: */s/Ikechukwu Emejuru*
Ikechukwu Emejuru
**Emejuru Law L.L.C.**
8403 Colesville Road
Suite 1100
Silver Spring, MD 20910
Telephone: (240) 638-2786
Facsimile: (240)-250-7923
iemejuru@emejurulaw.com